**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.**

**CLASS ACTION**

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity, and SERIES 15-09-157, a
series of MSP Recovery Claims, Series
LLC,

       Plaintiffs,

v.

MAIN STREET AMERICA GROUP, INC.,
MAIN STREET AMERICA ASSURANCE
COMPANY,

       Defendants.
_____/

**PLAINTIFFS' CLASS**
**<u>COMPLAINT FOR DAMAGES</u>**

## TABLE OF CONTENTS

NATURE OF THE ACTION.................................................................................................... 4

PLAINTIFFS' CLASS REPRESENTATIVE CLAIM ............................................................ 5

    The N.B. claim demonstrates Plaintiffs' right to recover for Defendant's failure to meet its reimbursement obligations under the MSP Law……………………………………5

    The F.C. claim demonstrates Plaintiffs' right to recover for Defendant's failure to meet its reimbursement obligations under the MSP Law……………………………………10

    The G.H. claim demonstrates Plaintiffs' right to recover for Defendant's failure to meet its reimbursement obligations under the MSP Law……………………………………13

JURISDICTION AND VENUE.......................................................................................... 17

BACKGROUND................................................................................................................. 18

    I.    Medicare Advantage Organizations.................................................................. 18

    II.    The Medicare Payment Process ....................................................................... 19

    III.    CMS' Standard for Storing Digital Health Insurance Claims Data ............................ 19

    IV.    Plaintiffs' Use of EDI to Analyze Claims Data and Identify Reimbursement Claims Under the MSP Act.................................................................................... 24

THE PARTIES ................................................................................................................... 25

CLASS DEFINITION ........................................................................................................ 26

CLASS ALLEGATIONS .................................................................................................... 26

    a.    Numerosity................................................................................................... 27

    b.    Commonality................................................................................................. 28

    c.    Typicality ..................................................................................................... 28

    d.    Adequacy ..................................................................................................... 29

    e.    Ascertainability ............................................................................................ 30

CAUSES OF ACTION ....................................................................................................... 31

COUNT I............................................................................................................... 32

    Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)............................... 32

JURY TRIAL DEMAND..................................................................................... 33

PRAYER FOR RELIEF........................................................................................ 33

Plaintiffs, MSP Recovery Claims, Series LLC, a Delaware entity and Series 15-09-157, a series of MSP Recovery Claims, Series LLC (collectively, "Plaintiffs"), on behalf of itself and all others similarly situated, brings this action against Main Street America Group, Inc., a Florida corporation ("MSAG") and Main Street Assurance Company, a Florida corporation ("Assurance") (and collectively, the "Defendants") and state as follows:

## NATURE OF THE ACTION

1.      This is a class action lawsuit under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer ("MSP") Act or the MSP Law, arising from Defendant's systematic and uniform failure to reimburse conditional Medicare payments.

2.      Defendants have repeatedly failed to reimburse payments by Plaintiff's assignors and the Class Members on behalf of Medicare beneficiaries enrolled in Part C of the Medicare Act (the "Enrollees") for medical expenses resulting from injuries sustained in an accident (the "accident-related medical expenses"). The Enrollees were enrolled in Medicare Advantage health plans offered by Plaintiffs' assignors and the Class Members, i.e., Medicare Advantage Organizations ("MAOs"). Plaintiffs' assignors and the Class Members suffered an injury in fact from Defendant's failure to reimburse, and accordingly, have standing to sue under 42 U.S.C. § 1395y(b)(3)(A) (the "MSP Private Cause of Action").

3.      Defendants have failed to fulfill its statutory duty upon entering into settlements with the Enrollees. Specifically, Defendants have entered into settlement agreements with Medicare beneficiaries as a result of claims arising under liability insurance policies issued by Defendants. Liability insurance plans are considered primary plans under 42 U.S.C. § 1395y(b)(2). Accordingly, Defendants are primary payers and must reimburse Plaintiffs and the putative Class

4

Members for their Medicare payments.

4.      Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made by original Medicare or an MAO.  As described in detail below, Plaintiffs' assignors and the Class Members have each suffered an injury in fact as a result of Defendants' failure to meet its statutory reimbursement obligations.

5.      On behalf of itself and the Class, Plaintiffs seek, *inter alia*, double damages under the MSP Private Cause of Action for Defendants' failure to properly reimburse conditional payments for Enrollees' medical expenses within the applicable limitations period. This lawsuit, like others, advances the interests of the MSP Law and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

<u>**PLAINTIFFS' CLASS REPRESENTATIVE CLAIM<br>RELATING TO MEDICARE PART C BENEFICIARIES**</u>

6.      Plaintiffs are the class representative of a class that consists of MAOs and their assignees. Accordingly, Plaintiffs set forth below examples of Defendants' systematic and uniform failure to fulfill its statutory duties when entering into settlements with Medicare beneficiaries. In this example, Plaintiffs describe Defendants' failure to reimburse conditional payments and how that failure caused an injury in fact to an MAO, which subsequently assigned its recovery rights to Plaintiffs.

<u>**The N.B. claim demonstrates Plaintiffs' right to recover for Defendant Assurance's failure<br>to meet its reimbursement obligations under the MSP Law.**</u>

7.      On November 7, 2014, N.B. was enrolled in a Medicare Advantage plan issued and administered by ConnectiCare, Inc. ("ConnectiCare"). ConnectiCare is an MAO.

8.      On November 7, 2014, N.B. was injured in an accident. The tortfeasor responsible for the accident was insured by Defendant under a liability insurance policy. As a direct result of the accident, N.B. sustained injuries which include but are not limited to the following:

      i.  7231-Cervicaligia

      ii.  7391 – Somat dysfunc cervic reg

      iii.  7210 – Cervical spondylosis

      iv.  78650 – Chest pain NOS

      v.  71941 -Pain in Joint Shoulder

      vi.  95901-Head Injury NOS

      vii.  E8120 – Mv collision NOS-driver

      viii.  E8495 – Accid on street/highway

A list of the diagnosis codes and injuries assigned to N.B. in connection with N.B.'s accident-related treatment is attached hereto as part of **Exhibit A**.

9.      As a direct and proximate result of the accident and the injuries detailed above, N.B. required medical items and services.  Those medical items and services include but are not limited to:

      i.  85610-Prothrombin time  [X]

      ii.  71020-Chest x-ray 2vw frontal&latl  [A]

      iii.  70450-Ct head/brain w/o dye  [A]

      iv.  72125-Ct neck spine w/o dye  [A]

      v.  36415-Routine venipuncture  [X]

      vi.  99284-Emergency dept visit  [A]

      vii.  98940-Chiropract manj 1-2 regions  [A]

As well as the following medications:[1]

      i.  00378548677      Meclizine 25 Mg Tablet

      ii.  65162044210      Meclizine 25 Mg Tablet

An account of the items and services provided to N.B. as a result of the accident are included within **Exhibit A**. The medical services were rendered between November 7, 2014 and November 5, 2015 by, among others, Manchester Memorial Hospital (located in Manchester, Connecticut).

10.    The medical provider subsequently issued a bill for payment of the accident-related medical expenses to N.B.'s MAO, ConnectiCare, which was fully responsible for all medical expenses incurred by N.B. ConnectiCare paid $1,640.44. for N.B.'s accident-related medical expenses. While Plaintiffs allege the amount paid solely for purposes of completeness, the medical provider actually billed and charged ConnectiCare $10,422.56. for N.B.'s accident-related medical expenses. The amount of damages recoverable under an MSP Act claim is what an MAO was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiffs seek double the amount of $10,422.56 as damages for this particular claim.

11.    Following N.B.'s claim against Assurance's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with N.B. By entering into that

---

[1] The numbers identified to the left of each medication represent its designated National Drug Code (NDC), which is a universal product identifier for human drugs in the United States.

settlement and releasing all claims, Assurance became a primary payer and subject to liability for N.B.'s accident-related medical expenses. In fact, Defendant reported and admitted to the Centers for Medicare & Medicaid Services ("CMS") that it was the primary payer for N.B.[2] Further, Defendant even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. A true and correct copy of Assurance's report to CMS is attached hereto as **Exhibit C**.[3] Despite Defendant's reporting that it was a primary payer, and the corresponding admission that it should have paid for N.B.'s accident-related injuries, Defendant failed to do so, giving rise to a claim under the MSP Act.

12.     Upon receipt of the settlement agreement between Assurance and N.B., Plaintiffs reserve the right to amend this Complaint to pursue reimbursement for N.B.'s medical expenses against any of Defendant's affiliates that entered into a release with N.B.

13.     Plaintiffs have the legal right to pursue this MSP Act claim pursuant to a series of valid assignment agreements.

14.     Specifically, on March 20, 2018, ConnectiCare irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC and to MSP Recovery, LLC, a Florida Limited

___

[2] Plaintiff has identified at least thirty (30) instances where one of the Defendants admitted it was to provide primary payment on behalf of Enrollees. A list of such instances is attached hereto as **Exhibit B**.

[3] Plaintiff obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies, such as Plaintiff, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by the Defendant, not the Plaintiff. Accordingly, any inaccuracies or lack of specificity in the reporting data would be attributable to the manner in which Defendant chose to report.

Liability Company (the "ConnectiCare Assignment"). The ConnectiCare Assignment is attached

hereto as **Exhibit D**, and expressly provides:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising or relating to the Assigned Medicare Recovery Claims, including claims under consumer statutes and laws, and all information relating thereto, as may be applicable.
>
> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

**Ex. D**.

15.     On April 4, 2018, MSP Recovery, LLC assigned all rights it had acquired under the

ConnectiCare Assignment to Series 15-09-157, a designated series of MSP Recovery Claims,

Series LLC (the "Series Assignment"). The Series Assignment from MSP Recovery to Series 15-

09-157 is attached hereto as **Exhibit E** and states:

> . . . MSP Recovery, LLC ("Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee, Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC, a Delaware Series Limited Liability Company, and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", "Assigned Assets", "Assigned Medicare Recovery Claims" and "Assigned Documents" (and all proceeds and products thereof) as such terms may be defined in the March 20, 2018 Assignment Agreement.

**Ex. E**.

16.    ConnectiCare consented, approved, and ratified the Series Assignment and all rights contained therein, including all claims and reimbursement rights, to and in favor of MSP Recovery Claims Series, LLC or any of its designated series, including but not limited to, Series 15-09-157. *See* **Exhibit F**.

17.    All purported conditions precedent to the filing of this lawsuit have occurred or been performed.

18.    Accordingly, Plaintiffs are entitled to collect double damages against Defendant for its failure to reimburse ConnectiCare's conditional payment for N.B.'s accident-related expenses.

## The F.C. claim demonstrates Plaintiffs' right to recover for MSAG's failure to meet its reimbursement obligations under the MSP Law.

19.    On November 26, 2014, F.C. was enrolled in a Medicare Advantage plan issued and administered by ConnectiCare.  As alleged above, Connecticare is an MAO.

20.    On November 26, 2014, F.C. was injured in an accident. The tortfeasor responsible for the accident was insured by Defendant under a liability insurance policy. As a direct result of the accident, F.C. sustained injuries which include but are not limited to the following:

    i.  8220 – Fracture patella-closed

    ii.  8221 – Fracture patella-open

    iii.  V5409 – Other aftercare involving internal fixation device

    iv.  4264 – Rt bundle branch block

    v.  71946 – Pain in joint, lower leg

    vi.  E8230 – Other motor vehicle nontraffic accident involving collission

    vii.  33818 – Other acute postoperative pain

A list of the diagnosis codes and injuries assigned to F.C. in connection with F.C.'s accident-related treatment is attached hereto as part of **Exhibit G**.

21.    As a direct and proximate result of the accident and the injuries detailed above, F.C. required medical items and services.  Those medical items and services include but are not limited to:

     i.  73562-X-ray exam of knee 3  [A]

     ii.  73560- X-ray exam of knee 1 or 2  [A]

     iii.  71010- Chest x-ray 1 view frontal  [A]

     iv.  93010-Electrocardiogram report  [A]

     v.  01320-Anesth knee area surgery  [J]

     vi.  A0429-Bls-emergency  [X]

     vii.  99223-Initial hospital care  [A]

     viii.  27524-Treat kneecap fracture  [A]

     ix.  99305-Nursing facility care init  [A]

     x.  29365-Application of long leg cast  [A]

     xi.  Q4034Cast sup lng leg cylinder fb  [X]

An account of the items and services provided to F.C. as a result of the accident are included within **Exhibit G**. The medical services were rendered between November 26, 2014 and December 8, 2014 by, among others, Barry N. Messinger, M.D. – an orthopedic surgeon affiliated with Manchester Memorial Hospital (located in Manchester, Connecticut).

22.    The medical providers subsequently issued bills for payment of the accident-related medical expenses to F.C.'s MAO, ConnectiCare, which was fully responsible for all medical

expenses incurred by F.C. ConnectiCare paid $5,315.01. for F.C.'s accident-related medical expenses. While Plaintiffs allege the amount paid solely for purposes of completeness, the medical provider actually billed and charged ConnectiCare $10,689.88. for F.C.'s accident-related medical expenses. The amount of damages recoverable under an MSP Act claim is what an MAO was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiffs seek double the amount of $10,689.88 as damages for this particular claim.

23.     Following F.C.'s claim against MSAG's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with F.C. By entering into that settlement and releasing all claims, Defendant became a primary payer and subject to liability for F.C.'s accident-related medical expenses. In fact, Defendant reported and admitted to the Centers for Medicare & Medicaid Services ("CMS") that it was the primary payer for F.C.  Further, MSAG even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. A true and correct copy of Defendant's report to CMS is attached hereto as **Exhibit H**. Despite Defendant's reporting that it was a primary payer, and the corresponding admission that it should have paid for F.C.'s accident-related injuries, Defendant failed to do so, giving rise to a claim under the MSP Act.

24.     Upon receipt of the settlement agreement between Defendant and F.C., Plaintiffs reserve the right to amend this Complaint to pursue reimbursement for F.C.'s medical expenses against any of Defendant's affiliates that entered into a release with F.C.

25.     Plaintiffs have the legal right to pursue this MSP Act claim pursuant to the series of valid assignment agreements detailed in paragraphs 14-18, *supra*.  The Assigned Medicare

Recovery Claims described in the Series Assignment likewise include the right to pursue and recover payments made by SummaCare on behalf of F.C.

26.     In addition, and although not required to do so as a precondition to suit, Plaintiffs attempted to coordinate benefits with MSAG regarding the F.C. claim.  To that end, Plaintiffs sent coordination of benefits letters dated June 20, 2018 and June 29, 2018 to MSAG.  True and correct copies of those letters are attached hereto as Composite **Exhibit I**.  Despite MSAG's receipt of the coordination of benefits letters, MSAG has failed to reimburse Plaintiffs for F.C.'s accident-related medical expenses.

27.     Accordingly, Plaintiffs are entitled to collect double damages against Defendant for its failure to reimburse ConnectiCare's conditional payment for F.C.'s accident-related expenses.

**The G.H. claim demonstrates Plaintiffs' right to recover for MSAG's failure to meet its reimbursement obligations under the MSP Law.**

28.     On July 22, 2016, G.H. was enrolled in a Medicare Advantage plan issued and administered by ConnectiCare (an MAO).

29.     On July 22, 2016, G.H. was injured in an accident. The tortfeasor responsible for the accident was insured by MSAG under a liability insurance policy. As a direct result of the accident, G.H. sustained injuries which include but are not limited to the following:

    i.  M19100 – Primary osteoarthritis, right shoulder

    ii.  M25511 – Pain in right shoulder

    iii.  S42231A – 3-part fracture of surgical neck of right humerus

    iv.  S42231D – 9-part fracture of surgical neck of right humerus, subsequent encounter for fracture with routine healing

     v.   S4991XA – Unspecified injury of right shoulder and upper arm, initial encounter

    vi.   S43401A – Unspecified sprain of right shoulder joint, initial encounter

   vii.   Z4802 – Encounter for removal of sutures

  viii.   Z96611 – Presence of right artificial shoulder joint

    ix.   G8918 – Other acute postprocedural pain

    x.   S8001XA – Contusion of right knee, initial encounter

    xi.   S42301A – Unspecified fracture of shaft of humerus, right arm, initial encounter for closed fracture

A list of the diagnosis codes and injuries assigned to G.H. in connection with G.H.'s accident-related treatment is attached hereto as **Exhibit J**.

    30.    As a direct and proximate result of the accident and the injuries detailed above, G.H. required medical items and services. Those medical items and services include but are not limited to:

    i.   99204 – Office/outpatient visit

    ii.   73562 – X-ray exam of knee 3

   iii.   73030 – X-ray exam of shoulder

   iv.   73200 – Ct upper extremity w/o dye

    v.   01740 – Anesth upper arm surgery

   vi.   64415 – N block inj brachial plexus

   vii.   23615 – Treat humerus fracture

  viii.   76000 – Fluoroscopy ,1 hr phys/qhp

    ix.  01638 – Anesth shoulder replacement

    x.  23472 – Reconstruct shoulder joint

As well as the following medications:

    iii.  00406051205        Oxycodone-Acetaminophen 5-325

    iv.  46672005350        Butalb-Acetaminophen Caff 50-325-40

An account of the items and services provided to G.H. as a result of the accident are included within **Exhibit J**. The medical services were rendered between July 22, 2017 and November 9, 2017.

31.    The medical providers subsequently issued a bill for payment of the accident-related medical expenses to G.H.'s MAO, ConnectiCare, which was fully responsible for all medical expenses incurred by G.H. ConnectiCare paid $14,147.49 for G.H.'s accident-related medical expenses. While Plaintiffs allege the amount paid solely for purposes of completeness, the medical providers actually billed and charged ConnectiCare $84,426.75 for G.H.'s accident-related medical expenses. The amount of damages recoverable under an MSP Act claim is what an MAO was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiffs seek double the amount of $84,426.75 as damages for this particular claim.

32.    Following G.H.'s claim against MSAG's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with G.H. By entering into that settlement and releasing all claims, MSAG became a primary payer and subject to liability for G.H.'s accident-related medical expenses. In fact, MSAG reported and admitted to the Centers for Medicare & Medicaid Services ("CMS") that it was the primary payer for G.H. Further, Defendant even reported information regarding the accident, the name of the reporting entity, and the type of

insurance policy involved. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. A true and correct copy of MSAG's report to CMS is attached hereto as **Exhibit K**. Despite Defendant's reporting that it was a primary payer, and the corresponding admission that it should have paid for G.H.'s accident-related injuries, Defendant failed to do so, giving rise to a claim under the MSP Act.

33.    Upon receipt of the settlement agreement between Defendant and G.H., Plaintiffs reserves the right to amend this Complaint to pursue reimbursement for G.H.'s medical expenses against any of Defendant's affiliates that entered into a release with G.H.

34.    Plaintiffs have the legal right to pursue this MSP Act claim pursuant to the series of valid assignment agreements detailed in paragraphs 14-19, *supra*.  The Assigned Medicare Recovery Claims described in the Series Assignment likewise include the right to pursue and recover payments made by SummaCare on behalf of G.H.

35.    In addition, and although not required to do so as a precondition to suit, Plaintiffs attempted to coordinate benefits with MSAG regarding the G.H. claim.  To that end, Plaintiffs sent coordination of benefits letters dated June 20, 2018 and July 2, 2018 to MSAG.  True and correct copies of those letters are attached hereto as Composite **Exhibit L**.  Despite MSAG's receipt of the coordination of benefits letters, MSAG has failed to reimburse Plaintiffs for G.H.'s accident-related medical expenses.

36.    Accordingly, Plaintiffs are entitled to collect double damages against MSAG for its failure to reimburse ConnectiCare's conditional payment for G.H.'s accident-related expenses.

37.    In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which .

16

. . are not reasonable and necessary for the diagnosis or treatment of illness or injury."

38.     Because this Section contains an express condition of payment – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

39.     Once an MAO makes a payment for medical items and services on behalf of its Enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

40.     The items and services received by and paid on behalf of the Enrollees, including N.B., F.C., and G.H. were reasonable and necessary.

41.     All purported conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendants.

42.     Pursuant to MSP Recovery Claims, Series LLC's limited liability agreement and Delaware law, all rights arising from the assignment to its series, along with the right to bring any lawsuit in connection with said assignment, belongs to MSP Recovery Claims, Series LLC. Therefore, MSP Recovery Claims, Series LLC pursue ConnectiCare's rights to recover reimbursement of Medicare payments that should have been paid, in the first instance, by Defendant.

## JURISDICTION AND VENUE

43.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

44.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Middle District of Florida because it is the district in which the cause of action accrued and in

which the Defendants are domiciled.

45.     This Court has personal jurisdiction over Defendants are both Florida corporations with their principal place of business located in Jacksonville, Florida.

46.     All conditions precedent to this action have occurred, been performed, or have been waived, including meeting any purported threshold amount to the applicable.

## BACKGROUND

47.     The MSP Law declares that Medicare or MAOs are "secondary payers" to all other sources of coverage, and, consequently, MAOs that are injured as a result are empowered to recoup from the rightful primary payer if Medicare or an MAO pays for a service that fell within overlapping insurance coverage for a Medicare Part C beneficiary.

48.     Defendants are each a primary plan under § 1395y(b)(2)(A) because they are liability insurers. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan…a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same).

## I.    Medicare Advantage Organizations

49.     The Medicare Advantage program, otherwise known as Part C, was enacted in 1997.  Under the Medicare Advantage program, a private insurance company, operating as an MAO, administers the provision of Medicare benefits pursuant to a contract with CMS.

50.     CMS pays the MAO a fixed fee per Enrollee and the MAO provides, at minimum, the same benefits an Enrollee would receive under traditional Medicare.  MAOs are a private sector analog to traditional Medicare and have the same rights to reimbursement from primary payers,

like the Defendant here.

## II.    The Medicare Payment Process

51.    An MAO must process and pay or deny claims promptly to comply with the specific requirements established by federal law, federal regulations, and the terms of its contract with CMS. Federal law requires Medicare and MAOs to pay within 30 days, 42 C.F.R. § 422.520(a), for only those medical expenses that are reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A).

## III.    CMS' Standard for Storing Digital Health Insurance Claims Data

52.    It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format.  According the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").[4]

      a.    The 837 standard is mandated by the Federal government and used federal and state payors such as Medicare and Medicaid.

      b.    The 837 standard is also used by private insurers, hospital clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

      c.    Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

53.    Essential components of an 837-claim file include but are not limited to the date(s)

---

[4] Department of Health and Human Services, Centers for Medicare and Medicaid. Medicare Billing: 837P and Form CMS 1500 (2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

of service, diagnosis code(s) and medical procedure code(s).

    a. <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

        i. According to industry best practices and guidelines, and to HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two-digits for the month, DD representing two digits for the day of the month). Sometimes this is alternately expressed as YYYYMMDD.[5]

        ii. The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[6], 2011[7], 2012[8], 2013[9], 2014[10], and 2016.[11]

---

[5] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[6] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 761 dated August 20, 2010, https://www.cms.gov/Regulations-and Guidance/Guidance/Transmittals/downloads/r761otn.pdf.

[7] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 988 dated October 28, 2011, Business Requirements Table II, 7602.1 – Requirement, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[8] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1050 dated February 29, 2012, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[9] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1277 Medicare Physician Fee Schedule, dated August 9, 2013, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[10] CMS Medicare Part D 2014 Guidance dated March 10, 2014, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[11] Medicare Plan Payment Group Enterprise Systems Solutions Group

iii.  CMS has also accepted the MM/DD/YYYY format for its local coverage determination data.  *See* Local Coverage Determination ("LCD") Date of Service Criteria.[12]

iv.  The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

v.  In general, ensuring the accuracy of dates, and other data is essential to performing analysis on claims data files by health insurers, and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

b.  <u>Medical Diagnosis and Procedure Codes</u>:

i.  Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the

---

Software Release Announcement, https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[12] CMS.gov.  Local Coverage Determination (LCD) Date of Service Criteria. https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[13][14]

    ii.   International Classification of Diseases (ICD-9 and ICD-10) The diagnosis information is reported by the hospital using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of services is before October 1, 2015), or ICD-10 CM if the date of services is on or after October 1, 2015

    iii.   Inpatient medical procedures ICD-9 Volume 2 and volume 3 and ICD-10 PCS. These codes are used to describe inpatient medical procedures, excluding the physician's bill.

    iv.   Current Procedural Terminology ("CPT") - CPT[15] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient

---

[13] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[14] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs." Specifically, beginning in October 2007, CMS began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system.  In a small number of MS-DRGs, classification is also based on the age, sex, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10 CM if the date of services is on or after October 1, 2015.

[15] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

physician services. The current version, CPT-4 is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[16]

v.  Ambulatory Patient Classification (APC) - Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and similar costs.[17]

vi.  Healthcare Common Procedure Coding System (HCPCS) - HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[18]

vii.  The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. 162.1002 - Medical data code sets.

---

[16] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

[17] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[18] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

viii.  The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

54.  Specifically, CMS primarily utilizes two systems of classification: (1) the International Classification of Diseases ("ICD-9") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. 162.1002.

**IV.  Plaintiffs' Use of EDI to Analyze Claims Data and Identify Reimbursement Claims Under the MSP Act.**

55.  Using a software system (the "MSP System"), designed and developed by Plaintiffs, Plaintiffs can capture, compile, synthesize, and funnel large amounts of data to identify claims class-wide. The MSP System captures data from different sources to identify the Class Member enrollees' medical expenses incurred as a result of an accident and which should have been reimbursed for by Defendants after it entered into a settlement. The System can also identify the amounts owed, by using the Defendants' EDI, the MAO's data, and data acquired from outside sources, like CMS.

56.  Plaintiffs merge the Defendants' data with the information available on the MSP System to discover and identify a Medicare eligible person for whom reimbursement of secondary medical payments should have been made, along with any information stored as to potential class members.

57.  The MSP System utilizes ICD-9 or ICD-10 CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to identify and obtain any information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances

that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a liability provider.

## THE PARTIES

58.     Plaintiff, MSP Recovery Claims, Series LLC, is a Delaware series limited liability company with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSP Recovery Claims, Series LLC's limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of MSP Recovery Claims, Series LLC.

59.     MSP Recovery Claims, Series LLC has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other Company assets, and in order to account for and associate certain assets with certain particular series. All designated series form a part of MSP Recovery Claims, Series LLC and pursuant to MSP Recovery Claims, Series LLC's limited liability agreement and applicable amendment(s), each designated series will be owned and controlled by the MSP Recovery Claims, Series LLC. MSP Recovery Claims, Series LLC may receive assignments in the name of MSP Recovery Claims, Series LLC and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, the MSP Recovery Claims, Series LLC will maintain the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by the MSP Recovery Claims, Series LLC in its own name or it may elect to bring suit in the name of its designated series.

60.     MSP Recovery Claims, Series LLC's limited liability agreement provides that any

rights and benefits arising from assignments to its series shall belong to MSP Recovery Claims, Series LLC.

61.    Series 15-09-157, is a designated series of MSP Recovery Claims, Series LLC with its principal place of business at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.

62.    Defendant MSAG is a Florida corporation with its principal place of business in Jacksonville, Florida.

63.    Defendant Assurance is a Florida corporation—and subsidiary of MSAG—with its principal place of business in Jacksonville, Florida.

## CLASS DEFINITION

64.    The putative class (hereinafter referred to as "Class Members") is defined as:

All Medicare Advantage Organizations, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, which made payments for a Medicare beneficiary's medical expenses where Defendant:

(1) is the primary payer by virtue of having settled a claim with Medicare beneficiary enrolled in a Medicare Advantage plan;

(2) settled a dispute to pay for personal injuries with a Medicare beneficiary enrolled in a Medicare Advantage plan; and

(3) failed to reimburse Medicare Advantage Organizations, or their assignees, the payments provided for medical items and services related to the claims settled by Defendant.

This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

## CLASS ALLEGATIONS

65.    This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees that paid for their beneficiaries' medical

expenses, when Defendants should have made those payments as primary payers and should have reimbursed the Class Members.

66.    As discussed in this class action Complaint, Defendants have failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Law.  This failure to reimburse applies to Plaintiffs, as the rightful assignees of MAOs that assigned their recovery rights to Plaintiffs, and to all Class Members.  Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

67.    Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments.  The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers.  Defendants' failure to reimburse Plaintiffs and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

68.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

        a.    **<u>Numerosity</u>**:    Joinder of all members is impracticable. Upon information and belief, there are hundreds of MAOs (including its assignees) throughout the United States, which were not reimbursed by Defendants after it entered into a settlement with a Medicare beneficiary enrolled in a Medicare Advantage plan administered

by an MAO. Thus, the numerosity element for class certification is met.

b. **<u>Commonality</u>**: Questions of law and fact are common to all members of the Class. Specifically, Defendans' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendants failed to make reimbursement payments, report the settlement it entered with Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with its statutory duty to pay or reimburse Plaintiffs' assignors pursuant to the MSP provisions. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiffs seek to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C beneficiaries, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **<u>Typicality</u>**: Plaintiffs' claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiffs' and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representative, Plaintiffs possess the same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiffs' claims and the Class Members' claims. Plaintiffs' claims are typical of the Class Members' claims

because Defendants failed to make primary payments for Enrollees' accident-related medical expenses, which it was obligated to do by virtue of their settlements with Enrollees. Plaintiffs' claims are typical because Plaintiffs, like the Class Members, have a right to relief for Defendants' failures to make primary payments, or reimburse Plaintiffs and Class Members for conditional payments of the Enrollees' accident-related medical expenses. Plaintiffs and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendants' business practices, acts and omissions are materially the same with respect to Plaintiffs and the Class Members' claims, as will be Defendants' legal defenses. Plaintiffs' claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff and the putative Class Members. In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **<u>Ascertainability</u>**: Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, and providing notice to such entities could be accomplished by direct communication.

69.    The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class. Defendant, whether deliberately or not, failed to make required payments under the MSP

provisions and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiffs, thus depriving Plaintiffs, as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

70.     It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiffs maintain a reasonable methodology for generalized proof of Class-wide impact, using the MSP System designed and developed by Plaintiffs and its counsel. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiffs are capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.

71.     Proceeding with a class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated entities to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the

benefit of comprehensive supervision by a single court with economies of scale.

72.    Administering the proposed Class will be relatively simple. Defendants provided liability insurance policies with claimants who are also Medicare beneficiaries.  Once the data identifying these policies is compiled and organized, Plaintiffs can determine which of the policy holders were Medicare beneficiaries during the applicable time.  Then, using the database, Plaintiffs and the Class Members can identify those payments made for medical treatment where the Defendant was (1) the primary payer and (2) for which reimbursement was not made.

## CAUSES OF ACTION

73.    Plaintiffs' claims result from Defendants' failures to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available.  Defendants issue liability insurance policies and are thus primary payers liable under the MSP Law.

## COUNT I
## Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)
### (All Defendants)

74.    Plaintiffs incorporate by reference paragraphs 1-61 of this Complaint.

75.    Plaintiffs assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of itself and all similarly-situated parties.

76.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

77.     Defendants' liability insurance policies are primary plans, which render each Defendant a primary payer for accident-related medical expenses.

78.     As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiffs' assignors paid for items and services which were also covered by liability insurance policies issued by Defendants.

79.     Because the Defendants are primary payers, the Medicare payments for which Plaintiffs seek reimbursement were conditional payments under the MSP Law.

80.     Defendants were required to timely reimburse Plaintiffs' assignors for their conditional payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendants failed to do so.

81.     Plaintiffs and the Class Members have suffered money damages as a direct result of Defendants' failures to reimburse the accident-related medical expenses.

82.     Defendants have derived substantial profits by placing the burden of financing medical treatments for their policy holders upon the shoulders of Plaintiffs' assignors and the Class Members.

83.     In this case, Defendants failed to administratively appeal Plaintiffs' assignors' right to reimbursement within the administrative remedies period on a class wide basis. Defendants, therefore, are time-barred from challenging the propriety or amounts paid.

84.     Plaintiffs, for itself and on behalf of the Class, bring this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendants for their failures to make appropriate and timely reimbursement of conditional payments for the Enrollees' accident-related

medical expenses.

## JURY TRIAL DEMAND

85.    Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

86.    WHEREFORE, Plaintiffs, individually and on behalf of the Class Members described herein, pray for the following relief:

    a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the Class;

    b.  designate Plaintiffs as representative for the Class and Plaintiffs' undersigned counsel as Class Counsel for the Class; and

    c.  issue a judgment against Defendants that:

        i.  grants Plaintiffs and the Class Members a reimbursement of double damages for those monies the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

        ii.  grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

        iii.  grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: January 29, 2019.                    Respectfully submitted,

**MSP RECOVERY LAW FIRM**
5000 SW 75 Avenue, Suite 300
Miami, Florida 33155
Phone: (305) 614-2222

By:    */s/ Gino Moreno*
Gino Moreno, Fla. Bar No. 112099
Email: gmoreno@msprecoverylawfirm.com
      serve@msprecoverylawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

**I CERTIFY** that a true and correct copy of this motion was electronically filed with the Clerk

of the Court *via* CM/ECF on this 29<u>th</u> day of January, 2019.

*/s/ Gino Moreno*