UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

MSP RECOVERY CLAIMS, SERIES LLC, a
Delaware entity, and SERIES 15-09-157, a
series of MSP Recovery Claims, Series, LLC,
and Series 16-08-483, a designated series of
MSP Recovery Claims, Series LLC,

        Plaintiffs,

v.                                      Case No. 3:19-cv-128-MMH-JRK

NGM INSURANCE COMPANY and OLD
DOMINION INSURANCE COMPANY,

        Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED CLASS COMPLAINT FOR DAMAGES**

       Defendants, NGM Insurance Company and Old Dominion Insurance Company,
pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, move this
Court to dismiss Plaintiffs' Amended Class Complaint for Damages, and in support state:

**I. INTRODUCTION**

       In 1980, Congress passed the Medicare Secondary Payer Act ("MSP Act") to reduce
Medicare costs by making the government the secondary, rather than the primary, payer when
private sources of insurance cover a beneficiary's illness or injury.   42 U.S.C. §
1395y(b)(2)(A).   The MSP Act prohibits Medicare from making any payments where a
primary insurer has already made a payment, or reasonably can be expected to make one.  *Id.*
§ 1395y(b)(2)(B)(i).   But when a primary insurer is not known (or cannot reasonably be

expected to make a payment) the MSP Act permits Medicare to make a "conditional payment" on the beneficiary's behalf. *Id.* The primary insurer must reimburse Medicare for these conditional payments "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect" to the items or services furnished to the beneficiary. *Id.* § 1395y(b)(2)(B)(ii).

In 1997, Congress enacted Medicare Part C. 42 U.S.C. §§ 1395w–21, *et seq.* Medicare Part C allows qualified participants to opt out of traditional Medicare and instead obtain benefits through private Medicare Advantage plans. The plans are administered by Medicare Advantage Organizations ("MAOs") which receive monthly payments from the United States for each enrollee. *Id.* § 1395w–23.

Plaintiffs' putative class action alleges a single count arising out of the MSP Act's "private cause of action" provision. *See* 42 U.S.C. § 1395y(b)(3)(A). Plaintiffs allege that Defendants failed to reimburse ConnectiCare and Health Insurance Plan of Greater New York ("HIPNY")—Plaintiffs' claimed assignor MAOs—for conditional payments allegedly made on behalf of certain Medicare beneficiaries[1] for medical expenses arising from injuries sustained in accidents. Plaintiffs assert that Defendants' settlement agreements with these beneficiaries entitle Plaintiffs—as the MAOs' assignees—to recover payments allegedly owed to the MAOs.

---

[1] These Medicare beneficiaries are not Defendants' insureds but are, instead, persons who were allegedly injured by an individual or entity insured by Defendants. (Dkt. 31 ¶¶ 8, 23, 37).

For the reasons described below, Plaintiffs cannot establish that they are the valid assignees of any claims related to injuries allegedly sustained by the exemplary beneficiaries named in the Amended Complaint.  For that reason, Plaintiffs lack standing to maintain this suit.  The Amended Complaint also fails to allege that Defendants were ultimately responsible for the reimbursement of those conditional payments.  Thus, Plaintiffs' Amended Complaint also fails to state a claim.

## II. SUMMARY OF RECENT DECISIONS[2]

### A.   Defendants' Supplemental Cases

**1)   *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-1537, 2019 WL 6311987 (C.D. Ill. Nov. 25, 2019).**

In *State Farm*, the Northern District of Illinois granted summary judgment against Plaintiffs and recognized (1) that MAOs must coordinate benefits and attempt to determine the existence of primary payers before making conditional payments, and (2) that conditional payments made by MAOs are not valid unless they were for reasonable, necessary, and accident-related treatment. 2019 WL 6311987, at *4–6. *State Farm* also held that MAOs may not make conditional payments unless they first determine that the primary payer has either not made a payment or cannot reasonably be expected promptly make a payment. *Id.* at *6 ("The [MSP Act's] text is clear and repeated twice. Conditional payments may be made [by an MAO] only where the primary plan 'has not made or cannot reasonably be expected to make

_____

[2] As the Court recognized in its most recent Order, several cases relevant to this dispute have been decided since Defendants' filed their previous motions in November 2019. Because these cases supplement arguments for which the Court is already familiar, Defendants have included this section as a convenient summary of the new authority. Defendants also discuss these cases in the argument sections. *See* Parts III & IV *infra*.

payment . . . promptly.' " (quoting 42 U.S.C. § 1395y(b)(2)(B)(i))).

Thus, *State Farm* refutes Plaintiffs' notion that an MAO's right to reimbursement is "automatic." *See* Part IV.B *infra*.  It confirms that an MAOs are not entitled to reimbursement unless the MAO, at minimum, attempts to identify primary payers. And even then, the amount of reimbursement is limited to payments reasonably related to the accident.

### 2) *MSP Recovery Claims, Series, LLC v. Zurich Am. Ins. Co.*, No. 18 C 7849, 2019 WL 6893007 (N.D. Ill. Dec. 18, 2019).

In *Zurich*, the Northern District of Illinois dismissed Plaintiffs' claims against the defendant-insurer for lack of standing (and denied leave to amend). It held that the "carve-outs" in Plaintiffs' assignment agreements precluded Plaintiff from establishing standing for the six exemplary claims named in the action:

> The assignment documents contain no list of which claims were assigned to it and which were excluded. The complaint fails even to acknowledge the exclusion by alleging that the six exemplar claims were assigned to plaintiffs and not to the Rawlings Group or any other recovery vendor. Absent such an allegation, the complaint fails to survive a facial challenge.

*Zurich*, 2019 WL 6893007, at *2.

Here, Plaintiffs' assignment agreements contain identical "carve-out" provisions. Thus, *Zurich* supports Defendants' argument that Plaintiffs' assignments divest the Court of subject matter jurisdiction. *See* Part III.B *infra*.

### 3) *MSP Recovery Claims, Series LLC v. Tech. Ins. Co., Inc.*, 18 CIV. 8036 (AT), 2020 WL 91540 (S.D.N.Y. Jan. 8, 2020).

In *Technology Insurance*,  the Southern District of New York also dismissed Plaintiffs' claims. As in *Zurich*, the court found that the carve-outs in Plaintiffs' assignments made it impossible for the court to "assess whether any of the representative claims actually fall within

the scope of the assignment, and therefore, whether Plaintiffs have standing to sue." *Tech. Ins.*, 2020 WL 91540, at \*3. It also characterized Plaintiffs' failure "to allege that the representative claims were never assigned to or being pursued by other recovery vendors" as "fatal to Plaintiffs' standing argument." *Id.* at \*4.

Technology Insurance* also supports Defendants' argument that Plaintiffs' assignments divest the Court of subject matter jurisdiction. *See* Part III.B *infra*.

**4)** **MSP Recovery Claims, et al. v. AIX Specialty Ins. Co., 6:18-cv-1456-PGB-DCI, 2020 WL 5524854 (M.D. Fla. Aug. 10, 2020).**

In *AIX*, the Middle District of Florida granted summary judgment against Plaintiffs and in favor of the defendant-insurer. In the final portion of his decision, Judge Bryon addressed whether Plaintiffs could maintain standing given the carve-out language in Plaintiffs' assignment agreement.

In concluding that Plaintiffs could not, Judge Byron recognized that he "must give meaning to the assignment provision's exclusionary language." *AIX*, 2020 WL 5524854, at \*10. To do so, he reasoned, required him "to determine whether the [exemplary] Claim was actually assigned to MSP Recovery or whether it was previously identified by a different recovery vendor." *Id.* And because Plaintiffs could not produce evidence that the exemplary claim was not assigned or being pursued by other recovery vendors, Judge Byron concluded, Plaintiffs lacked standing.

*AIX* provides additional support that Plaintiffs are without standing to sue. *See* Part III.B *infra*.

**B.     Plaintiffs' Supplemental Cases**

**1)** **MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co., 950 F.3d 764, 776 (11th Cir. 2020).**

5

In *Kingsway Amigo*, the Eleventh Circuit considered the narrow issue of whether MAOs must comply with MSP Act's claims-filing provision as a prerequisite for seeking reimbursement for conditional payments. 950 F.3d at 770 ("[T]he lone question presented [in this appeal] is whether compliance with the claims-filing provision is a prerequisite to filing suit under the Act's private cause of action."). The *Kingsway* panel held that MAOs did not.

*Kingsway*'s holding is irrelevant in any event; Defendants have not raised the claims-filing provision as a ground for dismissal.

**2)**      ***MSP Recovery Claims, Series LLC v. Ace Am. Inc. Co.*, 974 F.3d 1305 (11th Cir. Sept. 4, 2020).**

In *Ace*, the Eleventh Circuit held that "downstream actors" who make conditional payments on behalf of MAOs have standing to sue under the MSP Act. 974 F.3d 1305, 1313–16 (11th Cir. Sept. 4, 2020). A "downstream actor" is an MAO contractor or vendor that provides healthcare and administrative services for beneficiaries.

But Plaintiffs have not named any "downstream actors" as parties. Further, *Ace* did not consider whether MAOs are required to coordinate benefits with primary payers, the effect of the carve-out provisions typically included in Plaintiffs' assignments, or any other issue pertinent to resolving Defendants' Motion. Thus, *Ace* is also inapposite. [3]

---

[3] Defendants recognize that, according to *Ace*, pre-suit reporting to HHS may, in some circumstances, plausibly allege constructive knowledge on the part of the primary payor. *See Ace*, 974 F.3d at 1319. But nowhere does *Ace* hold that such reporting, standing alone, is conclusive as to the primary payor's knowledge. *See id.* Defendants also recognize *Ace's* holding that MAOs are not required to submit pre-suit demand letters to bring an action, and Defendants have not raised the validity of Plaintiffs' pre-suit demand letters as an issue in this Motion.

### III. PLAINTIFFS LACK STANDING

**A.**     <u>Legal Standard</u>

Standing is a threshold jurisdictional question to which "the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). "[F]irst and foremost, there must be alleged . . . an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990)) (internal quotation marks omitted). "[A] plaintiff without an injury in fact lacks Article III standing, and the federal courts do not have jurisdiction over his or her complaint." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

Rule 12(b)(1) permits a defendant to challenge a plaintiff's standing by attacking the sufficiency of the complaint's factual allegations (a facial attack) or by attacking the substance of the allegations (a factual attack). *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack "requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980)).

" 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* In other words, when the attack is factual,

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. **Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to**

> hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981)) (emphasis added).

"If a defendant makes a factual attack based on evidence outside of the pleadings, the plaintiff must also 'submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject-matter jurisdiction.' " *Landmark Equity Fund II, LLC v. Residential Fund 76, LLC*, 13-20122-CIV, 2014 WL 1652049, at *7 (S.D. Fla. Apr. 23, 2014), (quoting *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981)).

**B.    (Factual Attack) Plaintiffs Lack Standing Because They Do Not and Cannot Allege that They Were Assigned Claims for Exemplar Medicare Beneficiaries C.P., M.H., and F.C.**

Plaintiffs allege that a "series of valid assignment agreements" entitle them to pursue claims accrued by HIPNY and ConnectiCare.  (*See* Dkt. 31 ¶¶ 13, 28, 42). Plaintiffs are wrong. First, Plaintiffs' assignment agreements do not identify any claims relating to C.P., M.H., or F.C. (or any other beneficiary for that matter). Second, Plaintiffs' assignments exclude large and unidentifiable swaths of claims that have been assigned to or are being pursued by other recovery vendors. Third, Plaintiffs' assignments are silent on whether the assignor MAOs were reimbursed for payments made on behalf of the three exemplary enrollees named in the

Amended Complaint.[4]   (*See* Dkt. 31-4 (HIPNY Assignment); Dkt. 31-10 (ConnectiCare Assignment)).

For example, Plaintiffs suggest that the HIPNY Assignment assigns Plaintiffs a right to pursue damages for conditional payments HIPNY paid on behalf of enrollee M.H.  (Dkt. 31 ¶ 14).  The HIPNY Assignment, however, does not reference a claim relating to M.H., or any other HIPNY enrollee. And it expressly excludes a large number of unidentifiable claims that were either retained by HIPNY or assigned by HIPNY to other recovery vendors:

> Assignor wishes to assign to Assignee all right, title, interest in and ownership of Medicare Recovery Claims—***excluding* Medicare Recovery Claims that can be asserted against Assignor's members, enrollees and/or contracted providers, *and excluding* Medicare Recovery Claims that, as of the Effective date, have been assigned to and/or are being pursued by other recovery vendors**, including but not limited to, The Rawlings Group—related to Medical Health Care Services that were rendered and paid for by Assignor during the six (6) year period beginning September 29, 2011 and ending September 29, 2017.

(Dkt. 31-4 p. 1) (emphasis added).

The HIPNY Assignment also defines the excluded "Medicare Recovery Claims" as "Assignor Retained Claims" and reiterates that such claims have *not* been assigned to Plaintiffs:

> The definition of Assigned Medicare Recovery Claims set forth in the Preamble is reiterated and incorporated herein, and the following exclusions are restated for emphasis: Consistent with the definition of Assigned Medicare Recovery Claims set forth

---

[4] In ruling on this motion to dismiss, the Court may properly consider the assignments attached to Plaintiffs' Amended Compliant.  *See Basson v. Mortgage Elec. Registration Sys., Inc.*, 741 F. App'x. 770, 770–71 (11th Cir. 2018) ("The district court may always consider exhibits attached to the complaint on a [motion to dismiss], because exhibits are part of the pleadings." (citing Fed. R. Civ. P. 10(c))).

> in the Preamble, the Assigned Medicare Recovery Claims do not include claims that Assignor may have against its members, enrollees, and/or contracted providers, regardless of the nature of the claims o**r claims that are currently being pursued by other vendors pursuant to a contract with Assignor (such claims being defined as "Assignor Retained Claims"**).

(*Id.* p. 2) (emphasis added).

The ConnectiCare Assignment—under which Plaintiffs purport to have inherited claims for conditional payments made on behalf of enrollees F.C. and C.P.—contains the same exclusion:

> This Assignment includes all of Assignor's right, title and interest in and to the Assignor's any legal or equitable actions, rights, causes of action or lawsuits of any nature whatsoever, arising out of or in connection with the Assigned Medicare Recovery Claims. **As stated herein, excluded from the Assigned Medicare Recovery Claims are claims that Assignor may have against its members, enrollees, and/or contracted providers, regardless of the nature of the claims, or claims that are currently being pursued by other vendors pursuant to a contract with Assignor, i.e., the Assignor Retained Claims.**

(Dkt. 31-10 p. 2) (emphasis added).

Neither assignment specifies which claims fall within the scope of the "Assigned Medicare Recovery Claims" or are excluded as "Assignor Retained Claims." And neither assignment includes a schedule or other listing of assigned claims that "have been assigned to and/or are being pursued by other recovery vendors." (Dkt. 31-4 p. 1). Thus, it is possible that Plaintiffs' assignor MAOs retained one or more of the exemplary claims, assigned those claims to another recovery vendor, or both.[5] But this is no mere hypothetical.

---

[5] This uncertainty is only compounded by the HIPNY assignment, which purports to assign claims from three different assignor entities, two of which are not mentioned in Plaintiffs' Amended Complaint. (*See* Dkt. 31-4 p. 1).

Attached to this motion are **Exhibits A** and **B**, which are demand letters furnished to Defendants by The Rawlings Group, "another recovery vendor."  These demand letters seek to recover conditional payments ConnectiCare allegedly made on behalf of C.P. and F.C.  **Exhibit C**[6] is a also demand letter from The Rawlings Group; it seeks to recover conditional payments *Emblem Health* allegedly made on behalf of M.H.  Emblem Health is not named as a party to this suit.   Yet the HIPNY assignment names Emblem Health one of Plaintiffs' assignors. (*See* Dkt. 31-4 p. 1). This is fatal.

Recently, in *Zurich*, the Northern District of Illinois dismissed Plaintiffs' claims under identical facts, holding that the "carve-outs" in Plaintiffs' assignments precluded Plaintiffs from establishing standing:

> The assignment documents contain no list of which claims were assigned to it and which were excluded. The complaint fails even to acknowledge the exclusion by alleging that the six exemplar claims were assigned to plaintiffs and not to the Rawlings Group or any other recovery vendor. Absent such an allegation, the complaint fails to survive a facial challenge.

*Zurich*, 2019 WL 6893007, at *2. *Zurich* also concluded that Plaintiffs' unsupported allegations could not change the result:

> [E]ven if the court were to infer that plaintiffs are alleging that the six exemplars were assigned to them and not "carved out" of the general assignment, **defendant has provided letters from the Rawlings Group indicating that it has received assignments from HIP for the E.Z., A.C., and J.M. claims, and defendant has indicated that Rawlings is pursing the other three claims as well. Plaintiffs have offered no evidence to refute these letters or defendant's claims, nor have they asked for an evidentiary hearing to present evidence to defeat defendant's claims.** Consequently, the court concludes

---

[6] Defendants produced Exhibits A, B, and C to Plaintiffs in discovery. A Declaration attesting to the authenticity of Exhibits A, B, and C is attached as **Exhibit D**.

> that plaintiffs lack standing to bring the P.D., L.R., C.F., E.D.,
> A.C. and J.M. claims.

*Id.* (emphasis added).

The Northern District of Illinois' decision is no outlier. In September 2019, the Northern District of New York also concluded that the "carve-outs" in Plaintiffs' assignments were fatal to standing: "[T]he Court agrees with Defendant that there is no way to identify whether the R.L. claim—the exemplar claim here—has been assigned. That ambiguity is fatal to Plaintiffs' claim that they have standing, and the case must be dismissed for lack of jurisdiction." *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, 19-cv-00211-MAD-TWD, 2019 WL 4222654, at *5 (N.D.N.Y. Sept. 5, 2019).

The Southern District of New York reached the same conclusion in January 2020, dismissing Plaintiffs' claims because they "fail[ed] to allege that the representative claims were never assigned to or are being pursued by other recovery vendors." *Tech. Ins.*, 2020 WL 91540, at *4. Like the Northern District, it characterized this flaw as "fatal." *Id.* ("The Court agrees with Defendants that this flaw is fatal to Plaintiffs' standing argument."). In doing so, it also noted that it was merely joining "a growing contingent of courts that have dismissed complaints brought by Plaintiffs due to various standing defects." *Id.*

The Middle District of Florida joined this "growing contingent" in August 2020. Relying on *Technology Insurance*, Judge Byron granted summary judgment against Plaintiffs for lack of standing:

> The Court agrees with [the plaintiff] and the New York federal
> courts that it must give meaning to the assignment provision's
> exclusionary language. This requires the Court to determine
> whether the V.T. Claim was actually assigned to MSP Recovery

12

> or whether it was previously identified by a different recovery
> vendor.
>
> . . . .
>
> Here, Plaintiffs fail to set forth any facts to establish that the V.T.
> Claim was never assigned to or is being pursued by other recovery
> vendors. The Court agrees with AIX that this flaw is fatal to
> Plaintiffs' standing argument.

*AIX*, 2020 WL 5524854, at *10–11.

In any event, it is well-settled that a bare allegation that a valid assignment exists cannot establish standing. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, (1990) ("It is a long-settled principle that standing cannot be *inferred* argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." (emphasis added) (internal citations and quotation marks omitted)); *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc.*, 281 F. Supp. 3d 1278 (S.D. Fla. 2017) ("[T]he existence and validity of a[n] [assignment] are legal conclusions not facts."). And in light of Defendants' jurisdictional evidence, Plaintiffs cannot establish standing unless they produce evidence that the three exemplary claims were included in the HIPNY and Connecticare assignments. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (the party invoking the court's subject matter jurisdiction bears "the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction"); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof.").

But Plaintiffs cannot satisfy this showing. Plaintiffs have already admitted that the assignments attached to their Amended Complaint constitute the entire agreement between themselves and their MAO assignors. (*See* Plaintiffs' Responses to Defendants' Requests for

Admissions Nos. 14 & 15, attached as **Composite Exhibit E**.); *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) ("[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." (emphasis added)).

Because Plaintiffs cannot carry their jurisdictional burden, the Amended Complaint must be dismissed. *Stalley*, 524 F.3d at 1232 ("[A] plaintiff without an injury in fact lacks Article III standing, and the federal courts do not have jurisdiction over his or her complaint."); *see also City of Dallas*, 493 U.S. at 231 ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." (alterations in original)).

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM

### A.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  As such, the factual allegations contained within the complaint "must be enough to raise a right to relief above the speculative level." *Id.*; *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007).  Conclusory allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681.

### B. Plaintiffs Fail to Allege that its Assignor MAOs Attempted to Identify or Coordinate benefits with Defendants

Plaintiffs' Amended Complaint is pled as though MAOs may make conditional

payments whenever they choose, under any circumstances, and without any responsibility or obligation.  Plaintiffs' misguided theory is squarely foreclosed by the plain language of the MSP Act.

The MSP Act's enforcement provision, 42 U.S.C. § 1395y(b)(3)(A), limits private causes of action to cases where a primary plan "fails to provide for payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A) [of § 1395y(b)]."  42 U.S.C. § 1395y(b)(3)(A).  Paragraph 2(A), which is expressly referenced in the enforcement provision, addresses a necessary predicate to any private cause of action under the MSP Act.  It prohibits Medicare and MAOs from making any conditional payments where payment has been made or is reasonably expected to be made by a primary plan.  42 U.S.C. § 1395y(b)(2)(A).  Thus, if an MAO makes a conditional payment where payment was already made by a primary plan or is reasonably expected to be made, there is no private cause of action under the MSP Act. 42 U.S.C. § 1395y(b)(3)(A).  Consistent with this prohibition, the MSP Act, in the following section, 1395y(b)(3)(2)(B), describes when Medicare or an MAO *may* make payment:

> The Secretary may make payment under this subchapter with respect to an item or service if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (*as determined in accordance with regulations*).

*Id.* § 1395y(b)(2)(B)(i) (emphasis added).

Whether a conditional payment is  made "in accordance with regulations" is, in turn, informed by 42 C.F.R. § 422.108(b), which requires MAOs to:

> (1) Identify payers that are primary to Medicare under section 1862(b) of the Act and part 411 of this chapter;
>
> (2) Identify the amounts payable by those payers; and

> (3) Coordinate its benefits to Medicare enrollees with the benefits of the primary payers, including reporting, on an ongoing basis, information obtained related to requirements in paragraphs (b)(1) and (b)(2) of this section in accordance with CMS instructions.

Section 422.108(b) is a requirement and not merely a suggestion that MAOs may disregard when it suits them, as Plaintiffs wrongly contend. *See See State Farm*, 2019 WL 6311987, at *6 ("Conditional payments may be made only where the primary plan has not made or cannot reasonably be expected to make payment promptly. As Defendant notes, to prevent situations like the present one, the implementing regulations **require** MAOs to identify and coordinate with primary insurers." (emphasis added) (internal quotation marks and citations omitted)).

Thus, under the MSP Act, an MAO is entitled to make conditional payments *only after* the MAO has first determined that a liability insurer cannot reasonably be expected to make payment with respect to the items and services furnished to the Medicare beneficiary. *See State Farm*, 2019 WL 6311987, at *6 ("The [MSP Act's] text is clear and repeated twice. Conditional payments may be made only where the primary plan 'has not made or cannot reasonably be expected to make payment . . . promptly.' " (quoting " 42 U.S.C. § 1395y(b)(2)(B)(i))).   To satisfy this requirement, Plaintiffs must allege that the MAOs' payments were "proper" under the MSP Act. *Ocean Harbor Cas. Ins. v. MSPA Claims, 1*, 261 So. 3d 637, 644 (Fla. 3d DCA 2018) ("[F]or each reimbursement it claims, MSPA must demonstrate that . . . it ma[d]e a proper conditional payment under Medicare law. . . ."). Here, however, Plaintiffs have failed to do so.

In the thirty-plus pages of Plaintiffs' Amended Complaint, not a single allegation so much as suggests that its assignor MAOs satisfied the conditions of Paragraph (2)(B) or were otherwise authorized under the MSP Act to make those conditional payments.  Nor is there any allegation that the assignor MAOs, before making these payments, attempted to identify primary payers or the amounts payable by primary payers, much less coordinate its benefits with Defendants.  Without these allegations, Plaintiffs' Amended Complaint fails to state a claim.

### C. Plaintiffs Fail to Sufficiently Allege that Defendants were Ultimately Responsible for the Conditional Payments Plaintiffs Seek to Recover

To state a claim for relief under the MSP Act, Plaintiffs must allege facts to show that Defendants were responsible for payment of the conditional payments Plaintiffs' assignor MAOs allegedly made.  Alleging the existence of a contractual obligation is insufficient.[7]

> [A] contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the **condition precedent** to suit under the MSP Act.  **This does not relieve Plaintiffs of their burden to allege in their complaints,** and then subsequently prove with evidence, **that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover.**  And Defendants may still assert any valid contract defense in arguing against their liability.  We hold only that a contractual obligation may satisfy the demonstrated responsibility requirement**, not that the existence of a contractual obligation conclusively demonstrates liability under the MSP Act's private cause of action.**

---

[7] Such an allegation may satisfy a *condition precedent* to bringing a private cause of action under the MSP Act, but it does not state a claim for relief.  *See MSP Recovery, LLC v. Progressive Select Ins. Co.*, 96 F. Supp. 3d 1356, 1358 (S.D. Fla. 2015) ("The Eleventh Circuit has interpreted [§ 1395y(b)(3)(A)] to require a prior 'demonstration' of a primary plan's responsibility to pay as a **condition precedent** to bringing suit.") (emphasis added).

*MSP Recovery v. Allstate Insurance Co.*, 835 F.3d 1351, 1361 (11th Cir. 2016) (emphasis added).

> In so holding, the court [in *Allstate*] made clear that **an MAO must still carry the "burden to allege in their complaints, and then subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover."**

*Ocean Harbor*, 261 So. 3d 637, 645 (Fla. 3d DCA 2018)  (quoting *Allstate*, 835 F.3d at 1361) (emphasis added).

Under the MSP Act, primary plans are not responsible for reimbursing conditional payments unless the payments "are reasonable and necessary for the diagnosis or treatment of . . . [the enrollee's] injury." [8]  42 U.S.C. § 1395y(a)(1)(A); *see also MSP Recovery, LLC v. Allstate Ins. Co.,* No. 15-20788-CIV, 2015 WL 10857402, *3 (S.D. Fla. June 24, 2015) ("[I]n order for Defendant to be responsible for its Enrollee's medical bills, the bills must be reasonable, necessary, and related to the automobile accident.").  Here, Plaintiffs make only two insufficient allegations concerning Defendants' actual responsibility over claims made by the exemplar beneficiaries.

---

[8] In arguing otherwise, Plaintiffs ignore the plain distinction in the Federal Rules of Civil Procedure between alleging the satisfaction of a condition precedent and alleging facts sufficient to state a claim.  Under Rule 9(c), the satisfaction of condition a precedent may be pled generally.  For that reason, district courts throughout the Eleventh Circuit have concluded that the *Iqbal* analysis does alter Rule 9(c)'s general pleading requirement.  *See, e.g.*, *BAC Fin. Services, Inc. v. Multinational Life Ins. Co.*, 13-21529, 2013 WL 5929428, at *2 (S.D. Fla. Nov. 5, 2013) ("Defendant's assertion that *Iqbal* governs the analysis of whether Plaintiff has pled sufficient facts concerning its satisfaction of the conditions precedent is incorrect.").  In conflating the satisfaction of a condition precedent with adequately pleading a claim, Plaintiffs are incorrectly attempting to substitute Rule 9(c)'s general pleading requirement for the heightened standard established in *Iqbal.*

The first is an impermissible, and false, legal conclusion.  Plaintiffs allege: "Once an MAO makes a payment for medical and services on behalf of its Enrollees, the payment is conclusive proof that the items and services were reasonable and necessary."  (Dkt. 31 ¶ 47).  This "conclusive proof" theory has already been rejected in the traditional Medicare context.  *See Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861, 865 (5th Cir. 2013) ("[C]ourts across the country have . . .  held that an MSP claimant may not recover amounts from a purported 'primary plan' in excess of a carrier's responsibility under state law or the relevant contract."); *California Ins. Guarantee Ass'n v. Burwell*, 227 F. Supp. 3d 1101, 1113 (C.D. Cal. 2017) ("The Court is . . .  unconvinced that [the insurer] has a 'responsibility to make payment' for a treatment not covered by its policy just because that treatment is lumped together with other covered treatments on a line-item charge.").  This generalized allegation is also insufficient for Plaintiffs who claim to stand in the shoes of traditional Medicare.  *Cf., id.*

The second is a threadbare allegation that merely parrots an element of proof: "The items and services by and paid on behalf of Enrollees, including M.H., F.C., and C.P. were reasonable and necessary."  (Dkt. 31 ¶ 48).  But that conclusory allegation is not supported by any facts showing how the payments were reasonable and necessary.  And Plaintiffs' spreadsheets attached to the Amended Complaint provide no more applicable detail.  (*See* Dkts. 31-1; 31-8; 31-15).

The spreadsheets reflect that each of the beneficiaries received treatments on certain dates (and spanning many months), and that some unknown entity was charged for those treatments.  The spreadsheets provide no factual insight into what these treatments consisted of, or whether the treatments were reasonable and necessary.  Critically, the spreadsheets offer

no facts from which Court can even infer that the injuries treated were sustained from the beneficiaries' accidents or were related to the settlements alleged to have been entered into by Defendants.  *See Allstate Ins. Co.*, 2015 WL 10857402, at *3 (dismissing Plaintiffs' complaint where "Plaintiff has not pled that any of the medical bills paid by [the MAO] were reasonable, necessary, and related to the accident.").

In summary, Plaintiffs' conclusory allegations that Defendants settled with the three exemplary beneficiaries is not enough to survive dismissal.  *See Twombly*, 550 U.S. at 555.

## IV.   CONCLUSION

Plaintiffs have failed to adequately allege that are the valid assignees of any claims related to injuries allegedly sustained by the exemplary beneficiaries named in the Amended Complaint.  Plaintiffs also fail to sufficiently allege that its assignor MAOs' conditional payments were proper and that Defendants were ultimately responsible for the payments Plaintiffs seek to recover.  For those reasons, the Court should dismiss this case for lack of subject-matter jurisdiction or, in the alternative, dismiss Plaintiffs' Amended Complaint for failure to state a claim.

Respectfully submitted,

*/s/ Michael R. Freed*
Michael R. Freed, Esquire
Florida Bar No. 69205
mfreed@gunster.com
Angel A. Cortiñas, Esquire
Florida Bar No. 797529
acortinas@gunster.com
David M. Wells, Esquire
Florida Bar No. 309291
dwells@gunster.com
GUNSTER
225 Water Street, Suite 1750,
Jacksonville, Florida 32202
Telephone:  904-353-1980
Facsimile:  904-354-2170
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2020, the foregoing was filed using the Court's CM/ECF system and served via email or transmission of Notices of Electronic Filing generated by CM/ECF to all counsel of record by the Court's CM/ECF system.

By:  */s/ Michael R. Freed*